IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOCIAL BICYCLES LLC d/b/a JUMP, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 19-cv-05253 |
| v. ) | |
| ) | Hon. Joan H. Lefkow |
| CITY OF CHICAGO DEPARTMENT ) | |
| OF TRANSPORTATION; CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

The City has a contract with a company for the operation of a Citywide bicycle sharing system ("bikeshare system"). In selecting the company to operate the system, the City did not—and had no obligation to—follow the competitive bidding procedure set forth in section 8-10-3 of the Illinois Municipal Purchasing Act ("MPA"). *See* 65 ILCS 5/8-10-3. Rather, the City issued its own request for proposals, reviewed the submissions, selected the company's proposal, and entered into an agreement with the company in 2013. The Chicago City Council specifically authorized the contract by ordinance. In 2019, the parties amended the agreement, and again, the City Council enacted an ordinance specifically authorizing that amendment to the agreement.

Plaintiff—a competitor of the company that the City has this agreement with—claims that both the 2013 agreement and the 2019 amendment to the agreement are unlawful under state statute, the City's own municipal law, and the federal and state constitutions. Plaintiff maintains that the MPA and the City's own ordinances required the City to follow certain competitive bidding procedures before entering into the contracts. But Plaintiff is simply wrong. The City did not need to follow the requirements of the MPA because that statute, by its own terms, does

not apply to the types of contracts at issue here. Moreover, even if the MPA's terms did purport to encompass those contracts, the City still was not required to follow the statute, because its home rule authority under Illinois law allows it to deviate from the MPA. As a home-rule unit of government under the Illinois Constitution, the City has the authority to determine for itself what procedures it follows in procuring contracts.

Plaintiff's claim based on the City's alleged violation of its own ordinances fails for similar reasons. The section of the City's Municipal Code that Plaintiff cites, which establishes a general process for City Departments to follow when entering into certain contracts, does not apply to the kinds of contracts at issue. And even if it did, the City Council enacted ordinances expressly approving both the 2013 agreement and the 2019 amendment. The City Council retains the authority to decide to review and approve particular municipal contracts on a case-by-case basis, even if it also has a general approval process in place. Indeed, contracts cannot be said to violate City law when the City's lawmaking body—the City Council—expressly approved them.

Finally, Plaintiff asserts that the agreements violate its substantive due process rights. But substantive due process guards against egregious official conduct that implicates fundamental civil rights. The doctrine has no application in this dispute about municipal procurement procedures, and Plaintiff's claims are thus clearly meritless.

**FACTUAL BACKGROUND**

In 2011, the City wanted to establish a Citywide bikeshare system. Compl. ¶ 15. The City sought to partner with a private firm that had prior experience and expertise with purchasing, installing, and operating such a system and its infrastructure. *Id.* ¶ 16. In September 2011, the City issued a request for proposals ("RFP") from private vendors interested in operating the program. *Id.* An evaluation committee ultimately selected the proposal submitted

2

by Alta Bicycle Share Inc. ("Alta"), a company now known as Motivate International Inc. ("Motivate").

On April 8, 2012, the City Council enacted an ordinance ("2012 Ordinance") establishing the bikeshare program and authorizing the Commissioner of the Chicago Department of Transportation ("CDOT") to execute an Operator Agreement ("Agreement") with Alta for the purchase, installation, and operation of the program. *Id.* ¶ 24; *see also* Journal of Council Proceedings, 4/18/2012, p. 23781-23787, attached as **Exhibit A**, and available online at https://chicityclerk.s3.amazonaws.com/s3fs-public/document_uploads/journals-proceedings/2012/041812.pdf.[1] Pursuant to that ordinance, in January 2013, the City entered into the Agreement with Motivate (executed by the Commissioner of CDOT) that is the subject of this lawsuit. Compl. ¶ 25; *see also* Agreement, attached as **Exhibit B.**[2]

In 2018 and 2019, the City and Motivate negotiated an amendment to the Agreement ("Amendment"). As it did prior to execution of the Agreement itself, City Council again enacted an ordinance (the "2019 Ordinance), again authorizing execution of the Amendment by the Commissioner of CDOT. *See* Journal of Council Proceedings, 4/10/2019, p. 99069-99157, attached as **Exhibit C**, and available online at http://chicityclerk.s3.amazonaws.com/s3fs-public/document_uploads/journals-proceedings/2019/2019_04_10_VII_0.pdf. Contrary to Plaintiff's allegations, Compl. ¶ 42, the ordinance did not contemplate or require the Mayor's

---

[1] The Court may take judicial notice of the City Council's passage of an ordinance on April 18, 2012 authorizing the City to enter into the Agreement with Motivate. *See* Fed. R. Evid. 201; *see also Demos v. City of Indianapolis*, 303 F.3d 698, 706 (7th Cir. 2002); *Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir.1977) ("matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice").

[2] The 2012 Ordinance also acknowledged the Chief Financial Officer's ("CFO") authority, conferred by Section 2-32-055 of the Municipal Code of Chicago ("MCC"), to enter into agreements with advertisers and sponsors in connection with the bikeshare program, and the City entered into such contracts. Those agreements are not at issue here.

execution of the Amendment. *See* 2019 Ordinance at 99072 (authorizing Commissioner of CDOT to enter into and execute Amendment). The Amendment was executed on May 8, 2019, and was signed on behalf of the City by the CDOT Commissioner pursuant to the authority granted to her by the City Council in the 2019 Ordinance. *See id.*; Amendment, attached as **Exhibit D**, at 18.[3]

## ARGUMENT

I. **PLAINTIFF'S CLAIMS AGAINST THE VALIDITY OF THE CONTRACTS FAIL AS A MATTER OF LAW.**

    A.    The Contracts Are Not Unlawful For Failure To Follow The Illinois MPA.

        1.    The MPA's competitive bidding provision, section 8-10-3, does not apply to the Agreement or Amendment.

In Count I, Plaintiff asserts that both the Agreement and the Amendment are null and void because the City executed those contracts without following the bidding procedures allegedly required by section 8-10-3 of the MPA. That section provides that contracts "for labor, services or work, the purchase, lease, or sale of personal property, materials, equipment or supplies, involving amounts in excess of $10,000, made by or on behalf of any such municipality, shall be let by free and open competitive bidding after advertisement, to the lowest responsible bidder." 65 ILCS 5/8-10-3. Plaintiff contends that the City did not follow this requirement for open and competitive bidding, with award going to the lowest responsible bidder. The simple flaw in this argument is that the very next section of the MPA—section 8-10-4—expressly states that the competitive bidding procedures of section 8-10-3 do not apply to certain kinds of contracts, and the Agreement and Amendment fall into three of those categories.

---

[3] As was the case with the 2012 Ordinance, the 2019 Ordinance authorized the City's CFO to enter into advertising and sponsorship agreements in connection with the bikeshare program. The CFO executed the Amendment, along with the CDOT Commissioner.

4

Specifically, section 8-10-4 excludes from competitive bidding (i) contracts "for the services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part," (ii) contracts issued "pursuant to powers conferred by laws, ordinances or resolutions . . . or other authorizations by the corporate authorities of the municipality," and (iii) contracts (other than the sale or lease of personal property) "pursuant to which the municipality is the recipient of money[.]" *Id.* § 5/8-10-4.

Each of these exceptions applies to the Agreement and the Amendment. First, they are contracts for professional services involving a high degree of professional skill, namely the ability to establish and operate a Citywide bikeshare system. *See* Compl. ¶¶ 16, 25, 36; Ex. B, Art. 3 ("Duties and Responsibilities of Operator") & Exhibit 1 ("Scope of Services and Schedules"); Ex. D, §§ 2.1, 2.2., 2.8, 2.9, 2.10. Second, as discussed above, both the Agreement and the Amendment were awarded pursuant to City ordinances. Third, the Agreement and the Amendment involve the payment of money to the City. *See* Ex. B, Exhibit 3 ("Compensation Schedule") at §§ II(A), II(C)(3); Ex. D § 2.3. Thus, under the clear terms of section 8-10-4, the MPA's competitive bidding requirements in section 8-10-3 were not applicable, and Count I fails for this reason alone.

> **2. Even if section 10-8-3 covered the Agreement and Amendment, the City's home rule authority permitted it to deviate from section 10-8-3's requirements.**

Count I also fails because even if the MPA itself, through section 10-8-4, did not exempt the Agreement and Amendment from the competitive bidding requirements of section 10-8-3, the City's own home rule authority allowed it to exempt itself from those requirements. Home rule authority allows the City to determine for itself what process to follow before entering into the Agreement and the Amendment, the MPA notwithstanding.

5

The Illinois Constitution provides, in relevant part, that a home rule unit may exercise any power and perform any function pertaining to its government and affairs, unless state legislation specifically limits the municipality's exercise of that power. *See* Ill. Const., Art. VII, sections 6(a), (h) and (i). And Illinois courts have determined that the method by which a local government procures its contracts is a matter of local concern, and is therefore a matter "pertaining to its government and affairs." *American Health Care Providers v. Cty. of Cook*, 265 Ill. App. 3d 919, 926 (1st Dist. 1994) (discussing cases); *see also City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566, 573 (1st Dist. 1997) (home-rule unit's contracts are local in nature). Under basic home-rule principles, therefore, the City has the freedom to choose the manner in which it enters into contracts unless a state statute specifically and expressly preempted home rule control over this aspect of procurement. *See Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 2013 IL 110505, ¶ 31. Here, however, nothing in the MPA specifically preempts home rule control over the procedures for entering into services contracts. The City therefore was within its authority to enter into the Agreement and the Amendment without following any provisions in the MPA requiring competitive bidding. *See DMS Pharmaceutical Group v. County of Cook*, 345 Ill. App. 3d 430, 440 (1st Dist. 2004) (home rule county entitled to forego competitive bidding provisions of Illinois Counties Code in procuring its pharmaceuticals); *American Health Care Providers*, 265 Ill App. 3d at 930 (county had no obligation to follow competitive bidding requirements contained in the Counties Code because code did not evince "clear intent to limit or preempt the County's home rule power"). For this separate reason, Count I should be dismissed.

        **B.**    **The Contracts Are Not Unlawful Under The City's Own Law.**

In Count II, Plaintiff claims that the contracts are unlawful because they did not comport

with the procedures required by section 2-92-615 of the City's own Municipal Code. This claim fails because section 2-92-615, by its express terms, does not apply here. That provision applies only to contracts entered into by the CPO. MCC § 2-92-615(a)(i). The Agreement and Amendment were not entered into or awarded by the CPO, but rather were awarded pursuant to City Council ordinances granting authority to the CDOT Commissioner to enter into each (with, in the case of the Amendment, the review and concurrence of the CFO due to the grant of sponsorship and advertising rights). Accordingly, the contracts were not subject to the requirements of section 2-92-615, and Count II fails.

Moreover, even if section 2-92-615 of the MCC generally applied to the types of contracts at issue here, the contracts cannot be invalidated for failure to comply with a City ordinance when other City ordinances— here, the 2012 Ordinance and the 2019 Ordinance— expressly authorized the contracts. There can be no question that the plain terms of the 2012 Ordinance and 2019 Ordinance specifically authorize the contracts. And these ordinances, rather than section 2-92-615, govern the question of whether the contracts are valid as a matter of municipal law. Standard canons of statutory construction require giving effect to the more recent and more specific authorizations contained in the 2012 and 2019 Ordinances. *See Vill. of Chatham v. Cty. of Sangamon*, 216 Ill.2d 402, 431 (2005) ("[W]hen two statutes appear to be in conflict, the one which was enacted later should prevail, as a later expression of legislative intent."); *id.* ("[When one statutory provision] is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail."). Legislation enacted by the City Council cannot be invalidated on the ground that it conflicts with another piece of City Council legislation. Such a conflict, should one exist, is resolved according to the canons just described. Courts only have "authority to invalidate

7

legislation adopted by the city council . . . upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute." *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 179 (1988). But as described above, the contracts do not violate state statute, and, as described below, they do not violate the federal or state constitution, either. Count II should therefore be dismissed.

### C. This Case Does Not Implicate Substantive Due Process.

Plaintiff also asserts federal and state-law claims for substantive due process (Counts III and IV), but these claims are nearly frivolous. Whether brought under state or federal law, "[t]he scope of a substantive due process claim is limited." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019); *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003) (accord). Substantive due process is meant to protect "fundamental civil rights." *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001). And at least since the end of the *Lochner* era, courts have recognized only a handful of truly fundamental interests as rights protected by substantive due process. *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) ("The list of [fundamental] rights and interests is . . . a short one, including things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity."). Defendants are aware of no case in recent history where a court has even suggested that anything like Plaintiff's alleged interest—the interest in competing in an urban bikeshare market—is a fundamental right protected by substantive due process.

Indeed, on the alleged facts, a substantive due process challenge is barely defensible. To violate substantive due process, governmental conduct must be so irrational and arbitrary that it "shocks the conscience," and "only the most egregious official conduct can meet th[at] standard." *GEFT Outdoors*, 922 F.3d at 368; *see also People v. Stapinski*, 2015 IL 118278, ¶ 51,

40 N.E.3d 15, 25 (accord). To meet that high standard, the alleged governmental conduct must be truly outrageous. *See Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (concluding that even a police conspiracy to deliberately target individuals for harassment through enforcement of parking laws did not shock the conscience). Put another way, where the government's conduct is not so extreme that it jeopardizes a plaintiff's fundamental rights, the government need only show that its actions have a rational basis. *See, e.g.*, *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013); *Arangold Corp.*, 204 Ill. 2d at 147 (accord). Under that highly deferential standard of review, the challenged action or law must bear a "rational relationship to some legitimate end." *Goodpaster*, 736 F.3d at 1071. The governmental action will pass the rational basis test so long as a "sound reason [for the action] may be hypothesized." *Northside Sanitary Landfill, Inc. v. City of Indianapolis*, 902 F.2d 521, 522 (7th Cir. 1990).

As discussed above, Plaintiff does not identify any judicially recognized fundamental right at issue in this case, and the City's alleged actions do not come close to shocking the conscience. It is easy to hypothesize a rational basis for the City's actions. The City concluded that issuing a request for proposals would be a cost-effective, transparent, and efficient method of selecting a partner to operate its bikeshare system. The City then determined that Alta's proposal for the initial contract provided the best value of the three proposals it received, and the City later determined that it would be more cost effective and efficient to improve the bikeshare program by amending and expanding the agreement with its existing partner rather than abandoning the existing program and starting the program from scratch with a round of competitive bidding. The City's actions in connection with both the Agreement and the Amendment therefore had a rational basis. Counts III and IV should be dismissed with

9

prejudice.

### D. Count V Fails Because Plaintiffs Have No Basis To Declare The Agreement Or The Amendment Invalid.

For the reasons stated above, Plaintiffs fail to identify any genuine legal basis for invalidating the Agreement or the Amendment. Their claim for declaratory judgment (Count V), which is premised on the claims asserted in Counts I through IV, necessarily fails as well.

## II. EVEN IF PLAINTIFF COULD STATE A CLAIM ON THE MERITS, IT LACKS STANDING TO CHALLENGE THE 2013 AGREEMENT, AND ANY CHALLENGE TO THAT AGREEMENT IS ALSO TIME-BARRED.

To have standing under Article III to sue in federal court, a plaintiff must allege, among other things, that it has suffered an injury that "fairly can be traced" to the defendants' allegedly unlawful conduct. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 43 (1976). With respect to the 2013 Agreement, Defendants' allegedly unlawful action was their failure to award the contract pursuant to certain competitive bidding requirements, yet Plaintiff fails to allege that it suffered any injury traceable to that conduct. Plaintiff does not allege, for example, that it would have bid for—or won—the contract if the City had employed the MPA's competitive bidding procedures. Nor could Plaintiff plausibly make such an allegation: Plaintiff did not even submit a proposal as part of the City's RFP process. Put simply, Plaintiff has not alleged that it would be in any different position had the City employed a different contract selection process with respect to the 2013 Agreement, and thus it has failed to establish that it has any injury traceable to the City's actions in connection with that agreement.

Any challenge to the 2013 Agreement is also time-barred. Plaintiff's claims are not covered by any of Illinois' claim-specific statutes of limitations, and thus the five-year "catch all" limitation applies. *See* 735 ILCS 5/13-205 (five-year limitations period for "all civil actions not otherwise provided for"). Plaintiff's challenge to the 2013 Agreement is based on the

10

allegedly unlawful bidding process used to award the contract. Thus any alleged injury that resulted from that unlawful process accrued at the time the contract was either awarded or executed. Plaintiff brings this lawsuit more than six years after the award and execution of the Agreement, and thus its claims are clearly barred by the five-year limitations period.

## CONCLUSION

For all of the foregoing reasons, the City requests that the Court grant its motion and dismiss the Complaint in its entirety.

Dated: September 26, 2019

Respectfully submitted,

MARK A. FLESSNER
Corporation Counsel, City of Chicago


By: /s/ Justin Tresnowski

John Hendricks
Deputy Corporation Counsel
Andrew W. Worseck
Chief Assistant Corporation Counsel
Justin Tresnowski
Assistant Corporation Counsel
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-6975 / 4-7129 / 4-4216

Fiona A. Burke
Chief Assistant Corporation Counsel
City of Chicago, Department of Law
Aviation, Environmental, Regulatory,
 & Contracts Division
30 N. LaSalle Street, Suite 1400
Chicago, IL 60602
(312)744-6929

*Attorneys for Defendants*

11